## In the United States District Court
## Western District of Oklahoma

| | | |
|---|---|---|
| Shawn E. Alley, an individual, and Samantha M. Alley, an individual | § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Case No. CIV-23-985-F |
| Dirty Side Down Aviation, LLC, a Texas limited liability company, and Aviators Title and Escrow, LLC, an Oklahoma limited liability company | § § § § § § | |
| *Defendants* | § § | |

---

## DIRTY SIDE DOWN AVIATION, LLC'S ORIGINAL ANSWER TO THE ALLEYS' AMENDED COMPLAINT & CROSSCLAIM AGAINST AVIATORS TITLE

---

To the Honorable Judge of this Court:

Per Federal Rules of Civil Procedure 8, 12, and 13, Dirty Side

Down Aviation, LLC files its original answer to the *Amended Complaint*

(Dkt. 8) of Plaintiffs Shawn E. Alley and Samantha M. Alley and its

crossclaim against Defendant Aviators Title and Escrow, LLC.

## ANSWER TO THE ALLEYS' AMENDED COMPLAINT

1.     Dirty Side Down admits that the Alleys reside in Albany, Oregon, and hold themselves out as husband and wife, but presently lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1 concerning the Alleys' domicile.

2.     Dirty Side Down admits that it is a limited liability company formed under Texas law, that it presently maintains its principal place of business in Georgetown, Texas, and that it has two members (Kyle Keeling and Lacy Keeling), both of whom are natural persons domiciled in Texas.

3.     Dirty Side Down presently lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3.

4.     Dirty Side Down presently lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4.

5.     Without conceding that the Western District of Oklahoma is the most convenient forum for this case under 28 U.S.C. § 1404, Dirty Side Down admits that the Western District of Oklahoma bears a

sufficient nexus to this controversy to be a proper venue under 28 U.S.C. § 1391(b)(2). Dirty Side Down denies any remaining allegations in paragraph 5.

6.     In response to the allegations in paragraph 6, Dirty Side Down incorporates by reference its responses to paragraphs 1 through 5.

7.     Dirty Side Down admits that the Alleys agreed to purchase from Dirty Side Down a Cirrus SR20 aircraft, serial no. 1872, registration no. N384CP (from here, "the Cirrus") as set forth in the August 17, 2023 *Aircraft Purchase/Sales Agreement*. Dirty Side Down denies any remaining allegations in paragraph 7.

8.     Dirty Side Down admits that, per paragraph 3 of the *Aircraft Purchase/Sales Agreement*, Aviators Title was selected to serve as escrow agent for the sale of the Cirrus, and that an escrow account was established with Aviators Title. Dirty Side Down further admits that paragraph 3 of the *Aircraft Purchase/Sales Agreement* states that "[a]ll funds, including the deposit, all documents pertaining to this transaction, shall be transmitted through the escrow account . . . ." Dirty Side Down denies any remaining allegations in paragraph 8.

9.     Dirty Side Down presently lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.

10.    Dirty Side Down denies that the Alleys "authorized the Escrow Agent to release funds from the escrow account to the Seller's designated account using instructions supplied independently and solely by the Seller." Dirty Side Down admits the remaining allegations in paragraph 10.

11.    To the extent paragraph 11 makes claims or allegations against Dirty Side Down, Dirty Side Down denies those claims or allegations, including the allegation that "Seller failed to transmit its wiring instructions to the Escrow Agent using cyber-security measures customary and proper in the private aircraft industry." Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 11 makes claims or allegations against other parties, Dirty Side Down does not respond to claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 11.

12.    Dirty Side Down admits that it has not received the Cirrus's full price and that, since the *Aircraft Purchase/Sales*

*Agreement* makes receipt of the full purchase price a condition precedent to delivery of the Cirrus to the Alleys, Dirty Side Down has not delivered the Cirrus to the Alleys. Dirty Side Down denies the remaining allegations made against it in paragraph 12. Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 12 makes claims or allegations against other parties, Dirty Side Down does not respond to claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 12.

13.     Dirty Side Down lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 regarding payments made by the Alleys to their lender. To the extent paragraph 13 makes claims or allegations against Dirty Side Down, Dirty Side Down denies those claims or allegations, including any allegation that Dirty Side Down acted negligently. Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 11 makes claims or allegations against other parties, Dirty Side Down does not respond to claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 13.

14.    Dirty Side Down denies the allegations in paragraph 14, and incorporates here by reference its responses to paragraphs 1 through 13.

15.    In response to the allegations in paragraph 15, Dirty Side Down incorporates by reference its responses to paragraphs 1 through 14.

16.    Dirty Side Down admits that "[d]uring all times material herein, the Seller was [in] the business of buying[] and selling . . . private aircraft like the Aircraft[.]" However, Dirty Side Down denies that it was in the business of "operating private aircraft[.]" Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 16 makes claims or allegations against other parties, Dirty Side Down does not respond to claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 16.

17.    To the extent paragraph 17 makes claims or allegations against Dirty Side Down, Dirty Side Down denies those claims or allegations, including any allegation that Dirty Side Down owed a duty, either "individually" or "jointly" with another party. Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 17 makes claims or allegations against other parties, Dirty Side Down does not respond to

claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 17.

18. To the extent paragraph 18 makes claims or allegations against Dirty Side Down, Dirty Side Down denies those claims or allegations, including any allegation that Dirty Side Down "breach[ed]" any "duty of care" or acted "jointly" with another party. Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 18 makes claims or allegations against other parties, Dirty Side Down does not respond to claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 18.

19. To the extent paragraph 19 makes claims or allegations against Dirty Side Down, Dirty Side Down denies those claims or allegations, including any allegation that Dirty Side Down "breach[ed]" a duty of care, caused the Alleys' claimed "damages[,]" or acted "jointly" with another party. Per Federal Rule of Civil Procedure 8(b), to the extent paragraph 19 makes claims or allegations against other parties, Dirty Side Down does not respond to claims or allegations not "asserted against it[.]" Dirty Side Down denies any remaining allegations in paragraph 18.

20.    In response to the allegations in paragraph 20, Dirty Side Down incorporates by reference its responses to paragraphs 1 through 19.

21.    The allegations in paragraph 21 misstate the parties' respective duties and obligations under the *Aircraft Purchase/Sales Agreement*, and Dirty Side Down thus denies the allegations in paragraph 21.

22.    Dirty Side Down admits that funds were deposited with Aviators Title, but denies the remaining allegations in paragraph 22.

23.    Dirty Side Down denies the allegations in paragraph 23.

24.    Dirty Side Down admits that it has not received the Cirrus's full purchase price and that, since the *Aircraft Purchase/Sales Agreement* makes receipt of the full purchase price a condition precedent to delivery of the Cirrus to the Alleys, Dirty Side Down has not delivered the Cirrus to the Alleys. Dirty Side Down denies the remaining allegations in paragraph 24.

25.    Dirty Side Down admits that it has not received the Cirrus's full purchase price and that, since the *Aircraft Purchase/Sales Agreement* makes receipt of the full purchase price a condition precedent

to delivery of the Cirrus to the Alleys, Dirty Side Down has not delivered the Cirrus to the Alleys. Dirty Side Down denies the remaining allegations in paragraph 25.

26.    Dirty Side Down admits that it has not received the Cirrus's full purchase price and that, since the *Aircraft Purchase/Sales Agreement* makes receipt of the full purchase price a condition precedent to delivery of the Cirrus to the Alleys, Dirty Side Down has not delivered the Cirrus to the Alleys. Dirty Side Down denies the remaining allegations in paragraph 26.

27.    Dirty Side Down denies that the Alleys are entitled to the relief requested in paragraph 27, and incorporates here by reference its responses to paragraph 1 through 26.

28.    In response to the allegations in paragraph 28, Dirty Side Down incorporates here by reference its responses to paragraphs 1 through 27.

29.    Dirty Side Down denies the allegations in paragraph 29, and incorporates here by reference its responses to paragraphs 1 through 28.

Dirty Side Down denies that the Alleys are entitled to the relief requested in the concluding, unnumbered paragraph of their *Amended*

*Complaint*, and incorporates here by reference its responses to paragraphs 1 through 29.

## DEFENSES TO THE ALLEYS' AMENDED COMPLAINT

Per Federal Rules of Civil Procedure 8(b) and (c), Dirty Side Down pleads the following affirmative and other defenses to the Alleys' *Amended Complaint*. To the extent any of the following may be inconsistent with each other or any other allegation in this pleading, Dirty Side Down pleads alternatively per Federal Rule of Civil Procedure 8(d).

1.     Per section 15 of the *Aircraft Purchase/Sales Agreement* Texas law governs the Alleys' claims against Dirty Side Down.

2.     The economic-loss rule bars the Alleys' negligence claims against Dirty Side Down.

3.     Dirty Side Down owed the Alleys no duty and did not breach any duty it conceivably owed to them, and Dirty Side Down denies that any act or omission by it was a direct or proximate cause of injury or damages to the Alleys.

4.     Any injuries or damages alleged by the Alleys were caused, in whole or in part, by the unforeseeable criminal acts of a third party, acts which Dirty Side Down had no duty to prevent or warn against.

5.     Any injuries or damages alleged by the Alleys resulted from acts or omissions of third parties over whom Dirty Side Down had no control and for whose actions Dirty Side Down has no legal responsibility.

6.     The negligence of the Alleys was a proximate cause of their alleged injuries and damages, if any. Dirty Side Down invokes the doctrines of comparative negligence, comparative fault, contributory negligence, and proportionate responsibility, as those doctrines apply to bar or reduce the Alleys' claims for any injuries or damages the Alleys allege.

7.     Recovery for any injuries or damages the Alleys alleged is barred, in whole or in part, by their failure to mitigate damages.

8.     The Alleys have failed to perform a condition precedent to Dirty Side Down's delivery of the Cirrus under the *Aircraft Purchase/Sales Agreement*. Dirty Side Down has not received the Cirrus's full purchase price and, since the *Aircraft Purchase/Sales Agreement* makes receipt of the full purchase price a condition precedent

to delivery of the Cirrus to the Alleys, Dirty Side Down's obligation to perform has not been triggered.

9.    The Alleys' failure to perform all conditions precedent to Dirty Side Down's delivery of the Cirrus under the *Aircraft Purchase/Sales Agreement* constitutes a prior material breach that discharges Dirty Side Down from performance.

10.    The Alleys' failure to perform all conditions precedent to Dirty Side Down's delivery of the Cirrus under the *Aircraft Purchase/Sales Agreement* constitutes a failure of consideration that discharges Dirty Side Down from performance.

11.    Section 21 of the *Aircraft Purchase/Sales Agreement* bars the Alleys' claims for damages. That limitation-of-liability clause provides in relevant part that "THE PARTIES HEREBY EXPRESSLY WAIVE ANY CLAIM FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING DAMAGES RESULTING IN PERSONAL INJURY AGAINST THE OTHER, EXCEPT TO THE EXTENT SUCH DAMAGES ARE CAUSED BY SUCH PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT."

12.    The Alleys have not pled a valid basis for recovering attorneys' fees from Dirty Side Down.

13.    In any event, section 16 of the *Aircraft Purchase/Sales Agreement* bars any claims by the Alleys for attorneys' fees. That clause provides that, "[i]n the event any action is filed in relation to this Agreement, each party shall be responsible for his/her/its own attorney's fees."

14.    The Alleys remedies are limited by section 11 of the *Aircraft Purchase/Sales Agreement*, which defines their remedy "[i]f, for any reason the Buyer is unable to pay the price of the Aircraft, as specified in this Agreement[.]" In such circumstances, their sole remedy is the "return all payments, excluding any payment for deposits, reports, or inspections permitted by paragraph 5 [of the *Aircraft Purchase/Sales Agreement*] to the Buyer."

## CROSSCLAIM AGAINST AVIATORS TITLE

Per Federal Rule of Civil Procedure 13(g), Dirty Side Down pleads the following crossclaim against its co-defendant, Aviators Title.

## Facts

1.     In August 2023, Dirty Side Down and the Alleys entered into the *Aircraft Purchase/Sales Agreement*, under which Dirty Side Down agreed to sell the Cirrus to the Alleys.

2.     Since Aviators Title bills itself as having aircraft-escrow experience that "[n]ot one single person closing aircraft transactions today can top[,]"[1] the company was selected to serve as escrow agent for the transaction.

3.     Aviators Title agreed, in exchange for a fee to be paid by Dirty Side Down and the Alleys, to serve as escrow agent.

4.     In doing so, Aviators Title recognized and agreed that it would hold and ultimately transmit all funds pertaining to the Cirrus transaction.

5.     Aviators Title thus agreed that it would transfer to Dirty Side Down all amounts due to it under the *Aircraft Purchase/Sales Agreement*, as directed by the Alleys.

6.     The Cirrus transaction was supposed to close around September 27, 2023, at which time Aviators Title, as escrow agent,

---

[1] https://aviatorstitleandescrow.com/escrow

should have disbursed to Dirty Side Down $213,738.47, the remaining purchase price for the Cirrus.

7.      Sometime before the closing date, however, Aviators Title claims that it received an email with wire instructions for an account not previously associated with Dirty Side Down.

8.      That email was fraudulent. It was not sent by or on Dirty Side Down's behalf or with Dirty Side Down's knowledge.

9.      Instead of verbally confirming the legitimacy of those new instructions with a phone number Aviators Title had previously associated with Dirty Side Down, Aviators Title apparently called a new number — provided by the fraudster — that it had never used to communicate with Dirty Side Down and had no reason to connect to Dirty Side Down.

10.     When Aviators Title called the fraudster on the number the fraudster provided to verify the fraudster's fake wire instructions, the fraudster — of course — confirmed.

11.     So at closing, when it came for Aviators Title to disburse to Dirty Side Down the $213,738.47 held in Aviators Title's escrow account, Aviators Title did not send the money to Dirty Side Down.

15

12.     Instead, using the fraudster's fake wire instructions, Aviators Title disbursed the remaining purchase price of $213,738.47 to a stranger.

13.     Dirty Side Down does not know who received those funds, where they are, or how much might be recoverable.

14.     To date, Aviators Title refuses to fulfill its obligations as escrow agent to transfer $213,738.47 to Dirty Side Down.

### Count 1
### (Breach of Contract)

15.     Dirty Side Down incorporates paragraphs 1 through 28 of its crossclaim here by reference, and, to the extent necessary, pleads the allegations in Count 1 in the alternative per Federal Rule of Civil Procedure 8(d).

16.     Aviators Title contracted with Dirty Side Down and the Alleys to serve as escrow agent for the Cirrus transaction.

17.     In its role as escrow agent, Aviators Title promised to transfer to Dirty Side Down the amounts due to it under the *Aircraft Purchase/Sales Agreement*, as directed by the Alleys, including the remaining purchase price of $213,738.47.

18.    All conditions precedent to Aviators Title's duty to disburse the $213,738.47 to Dirty Side Down were performed or occurred.

19.    Aviators Title has not disbursed the $213,738.47 to Dirty Side Down. It instead wired the money to a fraudster using wire instructions not previously associated with Dirty Side Down and that Aviators Title attempted to verify by simply called a new number — provided by the fraudster — that it had never used to communicate with Dirty Side Down and had no reason to associate with Dirty Side Down.

20.    Aviators Title's breach of contract has caused Dirty Side Down to incur damages of at least $213,738.47.

## Count 2
### (Breach of Fiduciary Duty & Gross Negligence)

21.    Dirty Side Down incorporates paragraphs 1 through 28 of its crossclaim here by reference, and, to the extent necessary, pleads the allegations in Count 2 in the alternative per Federal Rule of Civil Procedure 8(d).

22.    Aviators Title agreed to and undertook to serve as an escrow agent for the Cirrus transaction.

23.    As escrow agent for the Cirrus transaction, Aviators Title was a fiduciary of Dirty Side Down as a matter of law.

24.     Further, in agreeing to use Aviators Title as escrow agent, Dirty Side Down placed its trust and confidence in the integrity and loyalty of Aviators Title to facilitate the Cirrus transaction. Among other things, Dirty Side Down trusted Aviators Title to take possession of and keep safe a significant sum of money intended to be used for the Cirrus's full purchase price and then to properly transfer those funds to Dirty Side Down, thereby triggering Dirty Side Down's obligation to deliver the Cirrus to the Alleys.

25.     Aviators Title thus owed Dirty Side Down a fiduciary duty to act in accordance with the express terms of the contract or agreement between Aviators Title and Dirty Side Down, and to act with the care, competence, and diligence normally exercised by escrow agents in similar circumstances with the same special skills or knowledge in aircraft transactions that Aviators Title claims to possess.

26.     Aviators Title violated the terms of its contract or agreement with Dirty Side Down by transferring the $213,738.47 to someone other than Dirty Side Down, thereby breaching the fiduciary duty it owed Dirty Side Down.

27.    Moreover, Aviators Title failed to act with the care, competence, and diligence normally exercised by escrow agents in similar circumstances with the same special skills or knowledge in aircraft transactions that Aviators Title claims to possess.

28.    Upon information and belief, Aviators Title failed to implement appropriate cybersecurity or similar digital security measures to prevent fraudsters from hijacking and inserting themselves into aircraft transactions in which Aviators Title serves as escrow agent.

29.    Additionally, rather than verify the purported wire instructions it received by confirming them with a known number associated with Dirty Side Down, Aviators Title apparently called a new number — provided by the fraudster — that it had never used to communicate with Dirty Side Down and had no reason to associate with Dirty Side Down.

30.    When Aviators Title called the fraudster on the number the fraudster provided to verify the fraudster's fake wire instructions, the fraudster — of course — confirmed. Aviators Title indefensibly relied on that fake confirmation to disburse the $213,738.47 to a stranger.

31.    Aviators Title's acts and omissions show that the company committed gross negligence. Aviators Title proceeded without the slightest care or diligence in connection with the $213,738.47 disbursement and with reckless indifference to the consequences of those acts and omissions.

32.    Aviators Title's breach of fiduciary duty and attended gross negligence have directly and proximately caused Dirty Side Down to incur damages of at least $213,738.47, and entitles Dirty Side Down to exemplary damages as may be awarded by the fact finder in this case.

## Count 3
## (Negligence & Gross Negligence)

33.    Dirty Side Down incorporates paragraphs 1 through 28 of its crossclaim here by reference, and, to the extent necessary, pleads the allegations in Count 3 in the alternative per Federal Rule of Civil Procedure 8(d).

34.    At all relevant times, Aviators Title owed Dirty Side Down a duty to exercise ordinary care, which required it to use the care a reasonably careful escrow company would have used under the same or similar circumstances.

35.    Aviators Title breached that duty.

36.   Upon information and belief, Aviators Title failed to implement appropriate cybersecurity or similar digital security measures to prevent fraudsters from hijacking and inserting themselves into transactions in which Aviators Title serves as escrow agent.

37.   Additionally, rather than verify the purported wire instructions it received by confirming them with a known number associated with Dirty Side Down, Aviators Title apparently called a new number — provided by the fraudster — that it had never used to communicate with Dirty Side Down and had no reason to associate with Dirty Side Down.

38.   When Aviators Title called the fraudster on the number the fraudster provided to verify the fraudster's fake wire instructions, the fraudster — of course — confirmed. Aviators Title indefensibly relied on that fake confirmation to disburse the $213,738.47 to a stranger.

39.   Aviators Title's acts and omissions show that the company committed gross negligence. Aviators Title proceeded without the slightest care or diligence in connection with the $213,738.47 disbursement and with reckless indifference to the consequences of those acts and omissions.

40.   Aviators Title's negligence and attendant gross negligence have directly and proximately caused Dirty Side Down to incur damages of at least $213,738.47, and entitles Dirty Side Down to exemplary damages as may be awarded by the fact finder in this case.

## PRAYER

Dirty Side Down asks that the Court enter judgment (1) that the Alleys take nothing by their claims against Dirty Side Down, (2) awarding Dirty Side Down, by way of its crossclaim against Aviators Title, all actual, consequential, and punitive damages to which it may be entitled, pre- and post-judgment interest as provided by law, and costs of suit, and (3) for all other relief to which Dirty Side Down may be entitled at law and in equity.

\*\*\*

Respectfully submitted,

**ADAMS AND REESE LLP**

By:     */s/ Kyle C. Steingreaber*
        Kyle C. Steingreaber
        Texas Bar No. 24110406
        W.D. Oklahoma Bar No. 23-234
        kyle.steingreaber@arlaw.com
        1221 McKinney Street
        Suite 4400
        Houston, Texas 77010
        (713) 652-5151 Office
        (713) 652-5152 Facsimile

*Attorneys for Dirty Side Down Aviation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*/s/ Kyle C. Steingreaber*
Kyle C. Steingreaber